**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JERRY M. SMITH | CIVIL ACTION NO. 04-0027 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| UNITED TEACHERS ASSOCIATES INSURANCE COMPANY | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 11) filed by Defendant United Teachers Associates Insurance Company, and a Motion for Summary Judgment (Record Document 17) filed by Plaintiff Jerry M. Smith. Both motions for summary judgment are opposed. Plaintiff moves for summary judgment awarding monthly disability benefits under a permanent disability insurance policy. Defendant moves for summary judgment dismissing all of Plaintiff's claims. For the reasons which follow, the Court finds that there are no genuine issues as to any fact material to the motions, and Defendant United Teachers Associates Insurance Company is entitled to judgment as a matter of fact and law.

**I. BACKGROUND**

The facts of this case are generally undisputed. Since the early 1960s, Plaintiff Jerry M. Smith ("Smith") owned Smith Oilfield Rentals. See Record Document 17, Exhibit 1 (Affidavit of Jerry M. Smith), ¶ 1. As owner, he traveled to various job sites, supervised the set up of equipment on job sites, performed maintenance during operation, and removed equipment after completion of a job. See id., Exhibit 1, ¶ 3. On or about May 17,

1975, Smith purchased a disability insurance policy ("the policy") from United Teachers Associates Insurance Company's ("United") predecessor, Lee National Life Insurance Company. See Record Document 1, ¶¶ 2 & 3. Pertinent policy provisions include:

> **POLICY SCHEDULE**
>
> | | |
> |---|---|
> | Monthly Indemnity, Total Disability | $1,500.00 |
> | MAXIMUM INDEMNITY PERIOD FOR ACCIDENT | LIFETIME OF THE INSURED |
> | MAXIMUM INDEMNITY PERIOD FOR ACCIDENT | TO AGE 65 OF THE INSURED |
>
> **Definitions**
> "Total Disability" means the complete inability of the Insured to perform the duties of his regular occupation.
>
> **Part I - Monthly Indemnity - Accident**
> TOTAL DISABILITY. If, as the result of such injuries, the Insured suffers continuous total disability within 90 days of the date of the accident and requires the regular attendance of a physician, the Company will pay periodically during such continuous total disability following the Elimination Period for Accident, at the rate of the Monthly Indemnity Total Disability specified in the Policy Schedule.
> Total Disability caused solely by such injuries and commencing more than 90 days after the date of the accident shall be indemnified under Part II of this policy.
>
> **Part II - Monthly Indemnity - Sickness**
> If, as a result of such sickness, the Insured suffers continuous total disability and requires the regular attendance of a physician, the Company will pay periodically during such continuous disability, excluding the Elimination Period for Sickness, at the rate of the Monthly Indemnity, Total Disability, specified in the Policy Schedule.
> Indemnity shall be payable for up to the Maximum Indemnity Period for Sickness specified in the Policy Schedule.
>
> **Part V - Recurrent Disabilities**
> If following a period of covered disability, the Insured shall resume his regular occupation and perform all the important duties thereof for a continuous period of 6 months or more, any subsequent disability commencing while this policy is in force and resulting from the same cause or causes shall be considered a new period of disability, but if said period during which the Insured resumes his regular occupation shall be less than 6 months, such subsequent disability commencing while this policy is in force shall be

> deemed a continuation of the preceding disability and the Company's liability for the entire period, including the period of such preceding disability or disabilities, shall be subject to the applicable Maximum Indemnity Period.

Record Document 17, Exhibit 3 (Total Disability Insurance Policy). As evidenced by the policy schedule, in the event of total disability, Smith would receive a monthly indemnity of $1,500.00. See id., Exhibit 1, ¶ 5.

Smith sustained a job-related injury in April 1993. See id., Exhibit 1, ¶ 7. In his affidavit, Smith stated that he could not walk or work for approximately one month after the April 1993 injury. See id., Exhibit 1, ¶ 10. Smith also alleges that he was under the care of both a doctor and a chiropractor at this time. See id. at 3. However, Smith desired to continue his business and resumed his regular occupation and performed all of the important duties of the business for a continuous period of more than six months. See id., Exhibit 1, ¶ 11. In fact, Smith continued to work until November 1997, when Smith alleges that he "suffered a recurrent total disability relating to the April, 1993, accident." See id., Exhibit 1, ¶ 12.

In January 1999, Smith sold Smith Oilfield Rentals. See id., Exhibit 1, ¶ 14. On March 2, 1999, Smith was diagnosed with post traumatic spondylosis and degenerative disc disease lumbar spine by Dr. P.V. Blanchard ("Dr. Blanchard"). See id., Exhibit 2 (Certificate of Attending Physician - Disability Claim). On the Certificate of Attending Physician - Disability Claim form, the subjective symptoms listed were "back pain, worse with ambulation, bending, stooping, or straining; and radiating into the leg." Id., Exhibit 2. Dr. Blanchard stated that Smith was totally disabled as of November 1997 and that Smith's present disability began in November 1997. See id., Exhibit 2.

On March 8, 1999, Smith filed for total disability under the policy. See id., Exhibit 1, ¶ 15; see also Record Document 12, Exhibit B (Affidavit of Lee R. McClung), ¶ 3. In the March 1999 claim, Smith stated that he became totally disabled in November 1997 as a result of an accidental injury in mid-April 1993. See Record Document 12, Exhibit B, ¶ 3. On June 7, 1999, United Disability Claims Examiner Ruthalyn Anderson ("Anderson") wrote to Smith. See Record Document 12, Exhibit B-1. In the letter, Anderson stated:

> Your claim for Total Disability benefits for the period beginning 7/9/98 has been approved.
>
> Your claim is being paid as an accident under the provisions of your policy. Your Elimination Period is 90 days and your maximum benefit period is for life.

Id., Exhibit B-1. Then, on August 19, 1999, Anderson again wrote Smith, stating:

> We have recently completed a review of your file. We are writing today to notify you of the outcome.
>
> As you may recall, we previously informed you that your recently submitted claim for Spondylosis, lumbar spine had been approved under the accident provision of your policy. It has been determined that your claim should be considered under the sickness provision.
>
> According to information you provided our office, you injury occurred in April 1993. You, however, did not cease working until November 1997. In the letter we received from Dr. P.V. Blanchard, dated June 15, 1999, we note that he did not treat you until July 9, 1998.
>
> . . .
>
> Based on the information provided, and the provisions of your policy, your claim will be processed as a sickness.

Id., Exhibit B-2.

Under the policy schedule, benefits payable due to sickness are payable until the insured reaches age 65. See Record Document 12, Exhibit A. United paid monthly

disability benefits to Smith until on or about January 22, 2000. See Record Document 1, ¶ 10. United terminated Smith's monthly disability benefits on January 22, 2000, because as of that date, Smith had reached age 65. See Record Document 12, ¶10. Smith argues that such termination was arbitrary and capricious and premised upon a distorted interpretation of the provisions of the policy. See Record Document 1, ¶ 11.

Smith filed suit in the Eleventh Judicial District Court, DeSoto Parish, Louisiana, on January 8, 2004, seeking monthly disability benefits under the policy and declaring the "sickness" provision of said policy null and void. See Record Document 1.[1] United removed the case on diversity grounds to the United States District Court for the Western District of Louisiana, Shreveport Division on January 8, 2004. See Record Documents 3 & 4. United answered the complaint on March 1, 2004, arguing that Smith's claim was rightfully paid under the "sickness" provision of the policy and that under the terms and conditions of the policy, Smith's disability benefits ended in January 2000. See Record Document 10.

United filed a motion for summary judgment on March 1, 2004. See Record Document 10. Smith filed his own motion for summary judgment on June 1, 2004. See Record Document 17. Both motions are opposed. See Record Documents 17 & 20. The cross motions for summary judgment are now before this Court.

---

[1] Smith named J. Paul Tauzin d/b/a The Tauzin Agency as a defendant in his complaint. See Record Document 1. On February 17, 2004, Smith voluntarily dismissed his action as to J. Paul Tauzin d/b/a The Tauzin Agency. See Record Document 9.

## II. LAW AND ANALYSIS

**A.    Summary Judgment Standard.**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552).  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996).  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.

Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

**B.  The Permanent Disability Insurance Policy.**

Again, the facts of this case are generally undisputed. There essentially two legal issues[2] before this Court: (1) whether Smith's disability claim was properly paid under the "sickness" provision of the policy, as compared to the "accident provision"; and (2) whether the "sickness" provision of the policy is against the public policy of Louisiana and therefore should be declared null and void.[3]

    **1.  Smith's Disability Claim was Properly Paid under the "Sickness" Provision of the Policy.**

There is no dispute that Smith's disability claim seeking total disability benefits under the policy was not filed until March 1999 or that Dr. Blanchard stated that Smith had been totally disabled since November 1997, some four years after the April 1993 injury. Further, while there is no dispute that Smith's claim for total disability benefits is directly related to his April 1993 injury, even Smith himself admits that he was able to return to work, visiting job sites and supervising the set up of equipment, about one month after the April 1993 injury. See Record Document 18, ¶ 4. In fact, Smith admitted in his affidavit that he resumed his regular occupation and performed all the important duties of his business. See Record Document 17, Exhibit 1, ¶ 11.

---

    [2]"Interpretation of an insurance policy is a question of law." Principal Health Care of La., Inc. v. Lewer Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994) (citation omitted).

    [3]"As a federal court sitting in diversity, [this Court] must apply Louisiana rules of policy interpretation in this case. Louisiana law is clear that the interpretation of insurance policy provisions is to be governed by the rules pertaining to the interpretation of other types of contracts." Principal Health Care of La., Inc., 38 F.3d at 242-43 (citation omitted).

Based on the foregoing, the Court finds that Smith's claim does not fall within "Part I - Monthly Indemnity - Accident" of the policy. Part I - Monthly Indemnity - Accident of the policy states, in pertinent part:

> TOTAL DISABILITY. If, as the result of such injuries, the Insured suffers continuous total disability within 90 days of the date of the accident and requires the regular attendance of a physician . . .

Record Document 17, Exhibit 3. Based on Smith's own admissions, he did not suffer "continuous total disability within 90 days of the date of the accident," as he returned to work one month after the accident and was not declared "totally disabled" by Dr. Pete Blanchard until November 1997. Further, while Smith maintains that he required the regular attendance of a physician during the one month following his April 1993 accident, the summary judgment record is devoid of medical records to support Smith's contention that he was seeing both a doctor and a chiropractor during that time.

Rather, this Court finds that United was correct in classifying Smith's disability claim under the "sickness" provision. His injury occurred in April 1993, yet he did not stop working until November 1997 and the medical records submitted as competent summary judgment evidence to this Court indicate that he did not see a physician until July 1998. Thus, as stated in Part I - Monthly Indemnity - Accident of the policy, Smith's total disability commenced more than 90 days after the date of the accident and should be indemnified under Part II of the policy. See id. Further, because the policy schedule provides that benefits payable due to sickness are payable until the insured reached age 65, United was no arbitrary or capricious in terminating Smith's monthly disability payments on January 22, 2000, because as of that date Smith had reached the age of 65. See id.

Smith also argues in his cross motion for summary judgment that he "suffered a recurrent total disability entitling him to benefits under the explicit terms Paragraph V of the policy." Record Document 18, ¶ 7. The Court disagrees. Even Smith himself admits that he continued the important duties of his job for a continuous period of more than six months. Record Document 17, Exhibit 1, ¶ 11. Under the plain language of Part V, Smith's disability claim was not based on a recurrent disability, as Part V states:

> If following a period of covered disability, the Insured shall resume his regular occupation and perform all the important duties thereof for a continuous period of 6 months or more, any subsequent disability commencing while this policy is in force and resulting from the same cause or causes shall be considered a new period of disability . . .

Record Document 17, Exhibit 3. Thus, in line with Part V of the policy, Smith's disability claim was processed as a new disability and was determined to have arisen from a "sickness," as his injury occurred in April 1993, he returned to work after one month, he continued to work until November 1997, he did not see a physician until July 1998, and that physician stated that he had been totally disabled since November 1997. Thus, Smith's argument that his disability was a recurrent disability, thus entitling him to judgment as a matter of law, fails.

Alternatively, Smith maintains that there is a genuine issue of material fact as to so-called "exclusionary language" relied upon by United to deny benefits. See Record Document 17 at 5. Smith contends that the "sickness" provision of the policy is an exclusionary provision; hence, the provision must be strictly construed against United and any ambiguity must be construed on favor of the insured. See Garcia v. St. Bernard Parish Sch. Bd., 576 So.2d 975, 976 (La. 1991) (stating that "exclusionary provisions in insurance

contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured). Here, the Court does not interpret the plain language of the "sickness" provision of the policy to be an exclusionary clause, as the "sickness" provision does not bar coverage. Instead, the words of the "sickness" provision are "clear and explicit and lead to no absurd consequences," thus this Court must enforce the contract as written. Succession of Fannaly v. Lafayette Ins. Co., 2001-1355 (La. 1/15/02), 805 So.2d 1134, 1137-1138 (stating that "when the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. Courts lack authority to alter the terms of an insurance contract under the guise of contractual interpretation when the contract's provisions are couched in unambiguous terms."). Simply stated, this Court refuses to create an ambiguity or manufacture a genuine issue of material fact as to the "sickness" provision of the policy where none exists. See id.

Based on the foregoing, this Court finds that there is no genuine issue of fact material to the motions for summary judgment and that United was proper in classifying Smith's disability claim under the "sickness" provision of the policy.

**2. Argument that the "Sickness" Provision Is Contrary to Public Policy Fails.**

In his petition for damages, Smith argues that treating his permanent disability as a sickness under the provisions of the policy is against the public policy of Louisiana and, thus, the "sickness" provision of the policy should be declared null and void. See Record Document 1, ¶ 12. In its motion for summary judgment, United contends that the "sickness" provision is not against public policy, as there is no Louisiana law supporting Smith's "unexplained contention." Record Document 11 at 7.

The Fifth Circuit has repeatedly confirmed that summary judgment is appropriate if the moving party demonstrates that there is an absence of genuine issues of material fact. See Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758, 762 (5th Cir. 1996). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Once the movant produces such evidence, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial." Id.

Here, United has informed the Court that there is no Louisiana law supporting Smith's "unexplained contention" that the "sickness" provision is against public policy. Conversely, Smith has failed to produce evidence to the contrary. Smith has not satisfied his burden of "tendering depositions, affidavits, and other competent evidence to buttress [his] claim." Id. In fact, Smith makes no mention of his previous argument regarding the validity of the "sickness" provision in his cross motion for summary judgment or his opposition to United's motion for summary judgment. See Record Document 17. Therefore, summary judgment is appropriate as to Smith's claim that the "sickness" provision is against public policy, as he has failed to set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial. See Rizzo, 84 F.3d at 762.

### III. CONCLUSION

Based on the foregoing, the Court finds that there are no genuine issues of material facts as to the motions for summary judgment and that summary judgment is proper as to United's motion for summary judgment. Accordingly;

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Record Document 11) be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Record Document 17) be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Complaint (Record Document 1) be and is hereby **DISMISSED WITH PREJUDICE** in its entirety.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 10th day of February, 2006.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE